Filed 12/2/24  In re M.C. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>M.G.,<br><br>    Defendant and Appellant. | G064044, G064110<br><br>(Super. Ct. No. 22DP0926)<br><br>O P I N I O N |

Appeals from an order of the Superior Court of Orange County, Joseph Kang, Judge. Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

The Orange County Social Services Agency (SSA) took custody of the child M.C. pursuant to a protective-custody warrant. At the end of the ensuing dependency proceedings, the juvenile court terminated parental rights over the child. M.C.'s mother, M.G. (Mother), challenges that order, contending that SSA failed to comply with its inquiry duties under the federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. She complains that SSA failed to inquire with certain extended family members.[1]

As discussed below, the record supported the juvenile court's determination that SSA's inquiry was adequate, proper, and duly diligent. We therefore affirm.

FACTS

I.

OVERVIEW OF PROCEEDINGS

In July 2022, SSA applied for a protective-custody warrant for eight-month-old M.C. because Mother was incarcerated and Father's whereabouts were unknown, among other reasons. The juvenile court granted SSA's application and issued a warrant under Welfare and Institutions Code section 340, authorizing SSA to take custody of M.C.[2]

SSA later filed a petition under section 300 on behalf of M.C., alleging, inter alia, that the parents had unresolved substance abuse issues and that Mother had unresolved mental health issues and was currently incarcerated. The juvenile court sustained the allegations in SSA's petition

---

[1] M.C.'s father (Father) is not a party to this appeal.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

2

and later ordered M.C.'s removal, with reunification services to be provided to the parents. After a six-month review hearing, the court terminated reunification services because the parents had not sufficiently progressed in their case plans. At the subsequent permanency-planning hearing, the court terminated parental rights after finding that M.C. was adoptable.

## II.

### SSA's ICWA INQUIRY

Early in the proceedings, both Mother and Father denied any Indian ancestry. The maternal grandfather also denied any Indian ancestry and reported that the maternal grandmother, who was ill and residing in a long-term care facility, likewise had no Indian ancestry. Similarly, one of two maternal uncles denied Indian ancestry.[3]

An SSA report noted the agency's efforts to identify and locate M.C.'s adult relatives. These efforts included asking the parents and other known relatives for this information. The report listed the maternal grandfather and paternal grandmother, along with their phone numbers. It also listed paternal great aunt C.C., stating that her contact information was "unknown."

At the dispositional hearing in September 2022, the juvenile court deferred making ICWA-related findings and ordered SSA to inquire about potential Indian ancestry with "paternal grandparents, maternal grandmother if/when her health permits, paternal great aunt [C.C.], and any aunts/uncles." It ordered SSA to submit a report documenting the results of the inquiry within 60 days. The record contains no such report.

---

[3] The record does not identify the maternal uncle who made this denial.

At a subsequent review hearing, Father was absent and his whereabouts were unknown. The juvenile court ordered SSA to search for him. An SSA social worker tasked with locating him called the paternal grandmother and left a voicemail. The paternal grandmother called back, provided Father's phone number, and asked that SSA not contact her again because she did not want to be involved in Father's personal matters. As far as the record shows, the social worker did not ask the paternal grandmother about potential Indian ancestry during this call.

In October 2023, SSA attempted to make additional ICWA inquiries with extended family members. It unsuccessfully tried to contact the paternal grandmother, the paternal grandfather, and at least one maternal uncle, leaving them voicemails.[4] SSA repeated this unfruitful effort in December 2023.

At the subsequent permanency planning hearing, the juvenile court found that ICWA did not apply and, as noted, terminated parental rights. Mother timely filed these consolidated appeals.

DISCUSSION

Mother's sole contention is that SSA failed to comply with its statutory ICWA obligations because it did not inquire with certain extended family members regarding potential Indian ancestry. SSA counters: (1) under the circumstances of this case, it had no duty to inquire with extended family members; and (2) in any event, its inquiry with extended family members

---

[4] SSA's report stated that the social worker tried to call both maternal uncles, but it listed the same phone number for both uncles. Other documents in the record listed a different number for one of the uncles.

was sufficient. As discussed below, we agree that SSA satisfied any duty to inquire with extended family members.[5]

## I.

### GOVERNING PRINCIPLES

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.]" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) "An 'Indian child' is 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078.)

Under California law implementing ICWA, whenever a section 300 petition may be filed, both the juvenile court and the county welfare department have an "affirmative and continuing duty" to inquire whether the child is or may be an Indian child. (§ 224.2, subd. (a).) The department's investigation need not be far-reaching; it must make "*reasonable* and diligent efforts to conduct the required inquiry." (*In re J.K.* (2022) 83 Cal.App.5th 498, 508, fn. 7.)

At the time of the proceedings below, section 224.2 required county welfare departments to inquire of potential Indian ancestry with

---

[5] Given our conclusion, we need not address whether SSA was in fact required to inquire with extended family members.

extended family, at least under some circumstances.[6] (Former section 224.2, subd. (b); Stats. 2022, ch. 420, § 43.) This inquiry does not require questioning of every single extended family member. "'[T]he key' question on appeal 'should be whether the ICWA inquiry conducted has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child."' [Citation.]" (*In re E.W.* (2023) 91 Cal.App.5th 314, 322.)

"A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the [county welfare department] nor the court had a reason to know or believe the subject child is an Indian child; and (b) the [d]epartment fulfilled its duty of inquiry. [Citation.]" (*In re H.B.* (2023) 92 Cal.App.5th 711, 719.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citation.]" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141.) "''[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.'''" (*In re H.B.*, at p. 719.)

---

[6] Under former section 224.2, the duty to inquire with extended family members did not expressly apply to children removed pursuant to protective-custody warrants. (Former § 224.2, subd. (b); Stats. 2022, ch. 420, § 43.) The Legislature recently amended the statute to expressly encompass those children. (§ 224.2, subd. (b)(2); Assem. Bill No. 81 (2023–2024 Reg. Sess.) (Stats. 2024, ch. 656, § 3).) Because we conclude SSA complied with any duty to inquire with extended family, we need not address whether this amendment applies to ICWA inquiries and findings that predated it.

## II.

### ANALYSIS

The record supports the juvenile court's determinations that SSA conducted an adequate ICWA inquiry, and that there was no reason to believe M.C. was an Indian child. On the maternal side, Mother denied any Indian ancestry. SSA inquired with the maternal grandfather and a maternal uncle, both of whom likewise denied Indian ancestry.

Mother complains that SSA did not attempt to contact the maternal grandmother or the maternal uncles. But as noted, SSA did inquire of one of the maternal uncles, who denied Indian ancestry. And as for the maternal grandmother, who had been unavailable at the time of SSA's first inquiry, the maternal grandfather reported that she, too, had no Indian ancestry. Together with Mother's own denial of Indian ancestry, these responses "'reliably answered'" the relevant question and showed that M.C. had no maternal Indian ancestry. (*In re E.W., supra*, 91 Cal.App.5th at p. 322.)

On the paternal side, Father denied Indian ancestry. SSA twice attempted to inquire with the paternal grandparents, who did not answer SSA's calls and did not call back. It also sought contact information for paternal great aunt C.C. but was unable to obtain it.

Here, Mother complains that SSA failed to inquire about Indian ancestry when a social worker spoke with the paternal grandmother in search of Father. We agree that the social worker should have taken the opportunity to inquire. But as noted, SSA later attempted, twice, to contact both paternal grandparents but received no response. The agency cannot compel responses from uncooperative relatives. This record supports the

7

juvenile court's determination that SSA's investigation was adequate, proper, and duly diligent.

Mother asserts SSA's ICWA inquiry was inadequate because the juvenile court's order at the dispositional hearing required SSA to do more. But the court's order did not modify the *statutory* inquiry requirements. And failure to comply with an order that the statute does not require cannot constitute a violation of the statute.[7] Accordingly, SSA did not fail to comply with its statutory duty of inquiry.

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

O'LEARY, P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

---

[7] Mother does not assert that failure to comply with the juvenile court's order, on its own, constituted reversible error, and we do not address the issue.

8